UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

AARON CHAVEZ,

        Petitioner,             Case No. 1:22-cv-452

v.                                        Hon. Hala Y. Jarbou

DAVID LEU, et al.,

        Respondents.
_____/

**OPINION**

        This is a habeas corpus action brought by a federal prisoner under 28 U.S.C. § 2241. Petitioner Aaron Chavez is currently incarcerated at the Federal Correctional Institution (FCI) Petersburg Low in Petersburg, Virginia.[1] In his § 2241 petition, Petitioner challenges the results of a disciplinary proceeding in which he was found guilty of being in possession of a cell phone and sanctioned to the loss of good conduct time (GCT). (ECF No. 2, PageID.11–12.)

        The Court directed Respondent to answer the petition in an order (ECF No. 4) entered on June 28, 2022. Respondent filed his response on August 29, 2022. (ECF No. 7.) Respondent contends that Petitioner's § 2241 petition should be denied and dismissed because: (1) some evidence supported the disciplinary decision; and (2) Petitioner received all the process to which he was due. (*Id.*, PageID.61–65.) After receiving an extension of time to do so (ECF Nos. 11, 14), Petitioner filed his reply (ECF No. 20) on December 1, 2022. For the following reasons, the Court will deny Petitioner's § 2241 petition.

---

[1] When Petitioner filed his § 2241 petition, he was incarcerated at the now-closed North Lake Correctional Institution in Baldwin, Michigan. After the petition was filed, he was transferred to FCI Petersburg Low. (ECF No. 10.)

**Discussion**

I. **Background**

Petitioner is currently serving a 120-month sentence imposed by the United States District Court for the Central District of California following his conviction for distribution of methamphetamine. (Grimsley Decl. ¶ 4, ECF No. 7-1, PageID.69, 74.) Petitioner's current projected release date, with GCT considered, is July 15, 2025. (*Id.*)

On March 9, 2021, Officer Rhyndress was conducting a search of Petitioner's cell when he found a cell phone and charger. (Incident Report, ECF No. 7-1, PageID.77.) The phone and charger "were in a small box that was adhered to the back side of the cell light, held there by two magnets." (*Id.*) The phone and charger were confiscated, photographs of the items were taken, and a chain of custody form was completed. (*Id.*) That same day, the incident was referred to the Lake County Sheriff's Department for possible criminal proceedings. (ECF No. 7-1, PageID.94.) The Sheriff's Department denied the referral on March 10, 2021. (*Id.*)

On March 10, 2021, a copy of the Incident Report charging a violation of Code 108, possession of a cell phone, was delivered to Petitioner. (Incident Report, ECF No. 7-1, PageID.77.) Petitioner was advised of his right to remain silent. (*Id.*, PageID.78.) Petitioner stated that he understood his rights. (*Id.*) When asked if he wanted to make a statement, Petitioner stated, "What can I say it was in my cell." (*Id.*) The Incident Report was forwarded to the Unit Disciplinary Committee (UDC) for further proceedings, and Petitioner was transferred to the Restrictive Housing Unit (RHU) pending disposition. (*Id.*)

Petitioner appeared before the UDC on March 12, 2021. (*Id.*, PageID.77.) He stated that he "had no comments" and that he had told the lieutenant that he had no comments. (*Id.*) The UDC referred the Incident Report to the Disciplinary Hearing Officer (DHO) for further proceedings. (*Id.*) The UDC also recommended, as sanctions, the loss of 41 days of GCT and the loss of 90 days

of commissary privileges. (*Id.*) That same day, Petitioner was provided a Notice of Disciplinary Hearing Before the DHO form. (ECF No. 7-1, PageID.96.) Petitioner indicated that he did not wish to have a staff representative and did not wish to call any witnesses. (*Id.*) He was also provided a copy of his rights at the DHO hearing and signed to indicate that he had been advised of such. (*Id.*, PageID.98.)

Petitioner appeared before the DHO on March 29, 2021. (DHO Hearing Report, ECF No. 7-1, PageID.100.) The DHO confirmed that Petitioner had waived his right to a staff representative and that Petitioner did not wish to call any witnesses. (*Id.*) When asked if he wished to make a statement, Petitioner stated: "I have nothing to say. I plead the [F]ifth." (*Id.*) In addition to the Incident Report and investigation, the DHO reviewed the criminal referral declination email from the Lake County Sheriff's Department, twelve photographs of the phone and charger, and the chain of custody form. (*Id.*) The DHO concluded that Petitioner had violated Code 108, possession of a cell phone, as charged. (*Id.*, PageID.101.) The DHO sanctioned Petitioner to: (1) disallowance of 41 days of GCT; (2) forfeiture of 41 days of non-vested GCT; (3) 30 days of disciplinary segregation; and (4) loss of commissary privileges for four months. (*Id.*) Petitioner subsequently appealed the disciplinary action to the Bureau of Prisons (BOP)'s North Central Regional Office and the National Administrator for Inmate Appeals; both appeals were denied. (ECF No. 7-1, PageID.104–129.)

Petitioner's § 2241 petition followed. (ECF No. 1.) In his brief in support thereof, Petitioner asserts that his disciplinary proceedings were invalid because: (1) BOP Program Statement 5521.06, which governs searches, requires that other staff members or at least one of the inmates assigned to a cell be present during a search of that cell; (2) he did not receive a copy of the chain of custody form; (3) officers refused to review video surveillance footage from the time of the

incident; and (4) he did not receive a timely copy of the UDC's decision. (ECF No. 2, PageID.14–18.) Petitioner requests that the Court grant his § 2241 petition and order the BOP to dismiss the Incident Report and "nullif[y]" all sanctions, including the GCT that was taken from him. (*Id.*, PageID.18.)

**II.      Discussion**

A federal inmate may challenge the manner or execution of his sentence under 28 U.S.C. § 2241. *See Hill v. Masters*, 836 F.3d 591, 594 (6th Cir. 2016) (citing *United States v. Peterman*, 249 F.3d 458, 461 (6th Cir. 2001)). "[Section] 2241 is a vehicle . . . for challenging matters concerning the execution of a sentence such as the computation of good time credits." *See Sullivan v. United States*, 90 F. App'x 862, 863 (6th Cir. 2004). Because Petitioner is challenging the loss of GCT due to his disciplinary conviction, and this challenge involves "the fact or extent of [Petitioner's] confinement, it can only be brought as a § 2241 petition. *See Wilson v. Williams*, 961 F.3d 829, 837 (6th Cir. 2020).

Where the government creates "the right to good time and itself recogniz[es] that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment [or Fifth Amendment] 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the [government]-created right is not arbitrarily abrogated." *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). Stating that Petitioner is entitled to due process protection in connection with the disciplinary proceeding, however, does not define the scope of that protection.

The Supreme Court has recognized that the scope of due process protection in the prison disciplinary context may be limited:

4

> We have often repeated that "[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Cafeteria & Restaurant Workers v. McElroy*, 367 U.S., at 895. "Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *Ibid.*; *Morrissey*, 408 U.S., at 481. Viewed in this light it is immediately apparent that one cannot automatically apply procedural rules designed for free citizens in an open society, or for parolees or probationers under only limited restraints, to the very different situation presented by a disciplinary proceeding in a state prison.

*Id.* at 561. The Court concluded that when good time sentence credit was at issue in a prison disciplinary proceeding, a prisoner was entitled to these procedural elements: advanced written notice of the charges; the opportunity to call witnesses and present other evidence in his or her defense; and a written decision explaining the grounds used to determine the sanctions imposed. *Id.* at 563–66. Additionally, the Supreme Court has held "that the requirements of due process are satisfied if *some evidence* supports the decision by the prison disciplinary board to revoke good time credits." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985) (emphasis supplied).

The limits of due process essentially define the boundaries of the protection afforded by § 2241. There is no direct judicial review of the BOP's determinations involving reduction of "good conduct" time, *see* 18 U.S.C. § 3625; *Jordan v. Wiley*, 411 F. App'x 201, 214 (10th Cir. 2011), and BOP program statements are clearly not "laws . . . of the United States" such that their violation warrants relief under § 2241, *see, e.g.*, *Reno v. Koray*, 515 U.S. 50, 61 (1995) ("[T]he Bureau's . . . 'Program Statemen[t]'. . . [is] . . .an internal agency guideline . . . akin to an 'interpretive rule' . . . ."); *Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011) ("A habeas claim cannot be sustained based solely upon the BOP's purported violation of its own program statement because noncompliance with a BOP program statement is not a violation of federal law.").

It may be that the BOP regulations regarding disciplinary procedures would be considered "laws . . . of the United States." *See generally* 13D Charles A. Wright and Arthur R. Miller, *Federal*

5

*Practice and Procedure* § 3563 (3d ed.1998) ("The reference in § 1331 to 'laws . . . of the United States' raises more difficult problems. In general, it means that there will be federal-question jurisdiction for a claim arising under an Act of Congress or an administrative regulation or executive order made pursuant to an Act of Congress." (footnotes omitted)).[2] Even Wright and Miller note, however, that the general rule is not "universally true;" sometimes regulations are not considered "laws of the United States." *Id*. Wright and Miller cite as an example, *Einhorn v. DeWitt*, 618 F.2d 347, 349–350 (5th Cir. 1980) ("[T]his action arises from an Internal Revenue Service regulation and not an Act of Congress. [The regulation] is a part of the Internal Revenue Service's Statement of Procedural Rules promulgated under 5 U.S.C. §§ 301, 552. Their purpose is to govern the internal affairs of the Internal Revenue Service. They do not have the force and effect of law."). *Einhorn*, in turn, cited *Luhring v. Glotzbach*, 304 F.2d 560 (4th Cir. 1962), in which the Fourth Circuit noted that the procedural rules at issue "were promulgated under the authority of . . . the Internal Revenue Code . . . and the Administrative Procedures Act . . .and were published in the Federal [R]egister . . . . In our view the procedural rules do not [have the force and effect of law]; and compliance with them is not essential to the validity of a notice of deficiency." *Luhring*, 304 F.3d at 563.

  *Einhorn* and *Luhring* suggest that the nature and intention of the regulation is of significance in determining whether it should be considered a "law of the United States." It is difficult to ignore, therefore, that the disciplinary proceedings provided for in the regulations at issue here are not subject to judicial review under the Administrative Procedures Act and they are entirely procedural in nature. Perhaps that is why at least some federal courts have concluded that

---

[2] Wright and Miller are commenting on the phrase "Constitution, laws, or treaties of the United States" as it appears in 28 U.S.C. § 1331, regarding federal question jurisdiction, not as it appears in 28 U.S.C. § 2241(c)(3), regarding habeas corpus. Nonetheless, the words are the same.

failure to comply with the regulations, without more, is not a ground for relief under § 2241. *See, e.g.*, *Dababneh v. Warden Loretto FCI*, 792 F. App'x 149, 151 (3d Cir. 2019) ("[E]ven where judicial review under the APA is specifically excluded by statute, judicial review remains available for allegations that BOP action violates the United States Constitution, *see Webster v. Doe*, 486 U.S. 592, 603–04 (1988), or is contrary to established federal law, *see Neal v. United States*, 516 U.S. 284, 295 (1996)."); *Martinez v. Fisher*, No. 13-cv-1150, 2015 WL 3756150, at *5 (D. Minn. Jun. 11 2015) ("[E]ven if Petitioner could establish that some of the BOP regulations were not met here, this would not entitle him to habeas relief. Habeas relief is only available for a violation of the Constitution, laws, or treaties of the United States."). *But see Lao v. Schult*, No. 9:09-cv-00653, 2010 WL 743757, at *5 (N.D.N.Y. Feb. 25, 2010) ("In this case, it is evident that the BOP regulations governing prison disciplinary proceedings, which have the force and effect of law, either were not followed or were misapplied. Thus imposition of the disciplinary action herein was contrary to the laws of the United States.").[3]

Because there is a possibility that violations of the BOP's regulations regarding prison disciplinary proceedings might, standing alone, rise to the level of a violation of the laws of the United States, the Court will consider any claims regarding such separately from the claim that the violation of the regulations resulted in a violation of Petitioner's due process rights.

### A. Violations of BOP Regulations

Petitioner first contends that Officer Rhyndress violated BOP Program Statement 5521.06, which governs searches, because that program statement requires that other staff members or at

---

[3] Although the *Lao* court concluded that violation of the regulations, even where those violations did not constitute violations of due process, could form the foundation for a § 2241 action as a violation of the laws of the United States, the *Lao* court also concluded that the violations in that case were harmless and, thus, relief was not warranted.

7

least one of the inmates assigned to a cell be present during a search of that cell. (ECF No. 2, PageID.15.) Petitioner, however, is mistaken. BOP regulations provided that "[s]taff may search an inmate's housing and work area, and personal items contained within those areas, without notice to or prior approval from the inmate and without the inmate's presence." 28 C.F.R. § 552.14. Moreover, BOP Program Statement 5521.06 contains no requirement that other staff or an inmate occupant be present during a cell search. (*See generally* ECF No. 7-2.) Petitioner's suggestion otherwise is frivolous.

Second, Petitioner suggests that staff violated BOP regulations by not providing him a copy of the chain of custody form. (ECF No. 2, PageID.15–18.) Petitioner contends that BOP regulations require that an inmate be provided every report generated during disciplinary proceedings. (*Id.*, PageID.17.) He alleges that the chain of custody form is of "great importance because in it, the officer can write any statement made by an inmate and have him sign this report so it can be used as evidence and will have the petitioner's acceptance of responsibility." (*Id.*, PageID.18.) Petitioner, however, appears to misunderstand the use of the chain of custody form. First, Petitioner was not even present during the search of the cell, and so it would not make sense for his signature to be anywhere on the chain of custody form because the evidence was not taken from his person. The chain of custody form simply notes that Officer Rhyndress confiscated the phone and charger from Petitioner's cell, gave the items to a sergeant, who provided them to the investigative officer, who then placed them in an evidence locker. (ECF No. 7-1, PageID.92.) In any event, the Court has not located any BOP regulations that indicate that a copy of the chain of custody form must be provided to the inmate. On the contrary, the BOP's regulations specifically provide that a copy of the investigation, which would include the chain of custody form, is not provided to the inmate. *See McCall v. Phelps*, No. 6:20-2034-BHH-KFM, 2020 WL 8083664,

8

at *5 (D.S.C. Dec. 14, 2020) (citing BOP Program Statement 5270.09), *report and recommendation adopted by* 2021 WL 75172 (Jan. 8, 2021).

Petitioner next suggests that investigating officers violated BOP regulations by refusing to review video surveillance footage from around the time of the incident. (ECF No. 2, PageID.16.) He argues that footage could have shown if anyone else went into his cell right before it was searched by Officer Rhyndress. (*Id.*) BOP regulations provide that an inmate charged with a disciplinary infraction may request "that other evidence be obtained and reviewed" during the investigation. 28 C.F.R. § 541.5(b)(2). The record, however, does not reflect that Petitioner asked for video surveillance footage to be reviewed and that staff denied such a request. Petitioner's argument otherwise is meritless.

Petitioner finally contends that staff violated the BOP's regulations regarding disciplinary proceedings by failing to provide him a timely copy of the UDC's decision. (ECF No. 2, PageID.17.) Petitioner claims he did not receive a copy of this report until April 29, 2022, and that his ability to appeal his disciplinary conviction and defend himself was impaired by the fact that he did not receive a copy of this report on time. (*Id.*) As an initial matter, Petitioner fails to explain, and the Court fails to discern, why he needed a copy of the UDC decision in order to appeal his disciplinary conviction. BOP regulations do provide that inmates "will receive a written copy of the UDC's decision following its review of the incident report." 28 C.F.R. § 541.7(h). Petitioner, however, fails to explain how he was prejudiced in any way from the alleged failure by staff to provide a copy of the UDC report. *See Villegas-Martinez v. Moser*, No. 19-189J, 2020 WL 5107559, at *5 n.10 (W.D. Pa. Aug. 31, 2020) (concluding that the petitioner demonstrated no prejudice by not receiving a written copy of the UDC's decision by the "close of business the next work day" after the UDC hearing). The record indicates that Petitioner was present at the UDC

9

hearing and, therefore, was aware of the UDC's findings. Moreover, Petitioner had no basis upon which to challenge the UDC's findings, as the UDC was not the ultimate factfinder in Petitioner's disciplinary hearings. The DHO is the one who ultimately found Petitioner guilty of violating Code 108, and the record indicates that Petitioner received a copy of the DHO's report on April 15, 2021. (ECF No. 7-1, PageID.101.) Thus, Petitioner was able to appeal his disciplinary conviction because he received a timely copy of the DHO's report. He simply fails to demonstrate that staff violated BOP regulations by not providing a timely copy of the UDC report to him.

### B. Violations of Due Process

Instead of focusing on the basic hallmarks of due process identified in *Wolff* and *Hill*, Petitioner primarily relies upon federal regulations and suggests that the failure to follow certain regulations constituted a denial of due process. The Supreme Court, however, has concluded that procedural regulations do not confer constitutional rights on inmates. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995). Moreover, the Sixth Circuit has noted that the BOP's "failure to adhere to its own policies or guidelines does not constitute a violation of due process." *Julick v. Snyder-Norris*, No. 16-6652, 2017 WL 5485453, at *2 (6th Cir. Mar. 1, 2017); *see also Bonner v. Fed. Bur. of Prisons*, 196 F. App'x 447, 448 (8th Cir. 2006) (noting that "a violation of prison regulations in itself does not give rise to a constitutional violation"). For that reason alone, Petitioner's argument that Officer Rhyndress violated his due process rights by allegedly disregarding BOP procedures regarding searches does not set forth a meritorious claim for relief.

Nonetheless, many of Petitioner's arguments may raise due process implications. For example, Petitioner argues that he did not receive a copy of the chain of custody report. (ECF No. 2, PageID.15–18.) As discussed *supra*, however, BOP regulations provide that a copy of the investigation, which would include the chain of custody form, is not given to the inmate. Instead, if the matter is forwarded to the DHO, "the DHO must give a copy of the investigation and other

10

relevant materials to the inmate's staff representative, if requested, for use on the inmate's behalf." *See* BOP Program Statement 5270.09, *Inmate Discipline Program*, at 21, *available at* https://www.bop.gov/mobile/policy (select "Program Statement" for Policy Type and "Inmate and custody management" for Program Statement Category, then scroll to find "Inmate Discipline Program" link) (last visited Dec. 2, 2022). Here, however, Petitioner waived his right to a staff representative. Petitioner, therefore, cannot maintain a due process claim premised upon an inability to obtain a copy of the chain of custody form when he waived his right to a staff representative who could have used the form on his behalf. *See McCall*, 2020 WL 8083664, at *5 (concluding same); *Lomas v. Vereen*, No. 6:19-cv-622-JMC, 2020 WL 913785, at *2 (D.S.C. Feb. 26, 2020) (concluding same).

Petitioner also contends that staff refused to review video surveillance footage to see if anyone else went into his cell before Officer Rhyndress conducted the search. As noted *supra*, however, nothing in the record even indicates that Petitioner requested that such footage be reviewed during the investigation. Even if he had requested such footage and was denied, a decision "not to review video tape evidence does not constitute a denial of due process under *Hill* and *Wolff*." *Harvey v. Wilson*, No. 6:10-cv-235, 2011 WL 1740141, at *10 (E.D. Ky. May 5, 2011); *see also McKeithan v. Beard*, 322 F. App'x 194, 201 (3d Cir. 2009) ("The videotape and photographs at most constitute potentially exculpatory evidence, which prison officials have no constitutional obligation to preserve or consider.").

Petitioner alleges further that he did not receive a timely copy of the UDC report. However, that contention does not directly correspond to any requirement of due process. As discussed above, Petitioner does not identify how he was prejudiced by not receiving a timely copy of this report, and the Court cannot conceive of any prejudice. The UDC's findings did not constitute the

11

final disciplinary action in Petitioner's proceedings, and the record reflects that Petitioner received a copy of the DHO report (which constitutes the final disciplinary action) on April 15, 2021. (ECF No. 7-1, PageID.102.) The Court therefore concludes that Plaintiff has failed to establish that he suffered any violation of his due process rights due to a delay in receiving the UDC report.

       The DHO Report indicates that Petitioner was provided notice, an opportunity to be heard, and a written decision and, therefore, received the procedural protections mandated under *Wolff*. In his reply brief, Petitioner appears to suggest that "some evidence" did not support his disciplinary conviction because it was based "on a statement that he never made." (ECF No. 20, PageID.162.) Petitioner appears to claim that he never stated "What can I say it was in my cell" during the initial investigation. The DHO, however, did not exclusively base Petitioner's conviction on that statement. Rather, the DHO considered the Incident Report, the investigation, the chain of custody form, and the photographs taken of the phone and charger, as well as the way they were hidden. (ECF No. 7-1, PageID.100–101.) Even if Petitioner had not made the statement noted above, the evidence considered by the DHO would have been sufficient to support a finding of guilt under a theory of constructive possession, since Petitioner "would still have dominion[] or control over the . . . premises in which the contraband [was] located." *Flannagan v. Tamez*, 368 F. App'x 586, 588 n.5 (5th Cir. 2010) (internal quotation marks omitted). Petitioner, therefore, is not entitled to the relief he seeks.

**Conclusion**

For the reasons discussed above, Petitioner received the procedural protections mandated under *Wolff* and the BOP's disciplinary regulations. Moreover, "some evidence" supports the DHO's conclusion that Petitioner was guilty of violating Code 108. Accordingly, the Court will enter a judgment denying Petitioner's § 2241 petition.[4]

Dated: December 9, 2022  /s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE

---

[4] In § 2241 cases involving federal prisoners, the Court need not address whether to grant a certificate of appealability. *See Witham v. United States*, 355 F.3d 501 (6th Cir. 2004).